# 22-2182-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MAXMILLIAN SLOLEY,

*Plaintiff-Appellant*,

*v.*

ERIC VANBRAMER, INDIVIDUAL AND OFFICIAL CAPACITY,

*Defendant-Appellee*,

STATE OF NEW YORK, BRIAN VANBRAMER, INDIVIDUAL AND OFFICIAL CAPACITY,

*Defendants*.

On Appeal from the United States District Court
for the Northern District of New York, No. 1:14-CV-339
Before the Honorable Christian F. Hummel

## REPLY BRIEF FOR
## PLAINTIFF-APPELLANT MAXMILLIAN SLOLEY

RYAN CHABOT
ALAN SCHOENFELD
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Counsel for Plaintiff-Appellant*

August 27, 2024

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................3

I.   THE JURY INSTRUCTION CONTAINED PREJUDICIAL ERRORS ............................3

     A.   The Court's Admittedly Erroneous Jury Instruction
          About The Reasonable Suspicion Required To Conduct
          A Visual Body Cavity Search Was Prejudicial....................................3

          1.   The district court erred—admittedly—in its
               instruction about the visual body cavity inspection
               that Sloley experienced ..............................................5

               a.   *VanBramer conducted a visual body cavity
                    search* ..................................................................5

               b.   *The district court's instruction was wrong*......................8

          2.   That admitted error was prejudicial .........................................11

     B.   The Negligence Instruction Was Prejudicially Misleading ...............16

     C.   The Evidentiary Errors Underscore The Prejudice ............................18

II.  THE COURT HAS JURISDICTION OVER THE POST-TRIAL MOTIONS .................19

CONCLUSION .................................................................................26

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc.*,
   997 F.3d 367 (1st Cir. 2021)..........................................................25

*Boggs v. Lewis*,
   863 F.2d 662 (9th Cir. 1988) ........................................................15

*Boyde v. California*,
   494 U.S. 370 (1990)......................................................................16

*Bradley v. Coughlin*,
   671 F.2d 686 (2d Cir. 1982) ..........................................................26

*Chalmers v. Mitchell*,
   73 F.3d 1262 (2d Cir. 1996) ..........................................................14

*Dancy v. McGinley*,
   843 F.3d 93 (2d Cir. 2016) ............................................................17

*DeJesus v. Lewis*,
   14 F.4th 1182 (11th Cir. 2021) ......................................................15

*Elliott v. City of Hartford*,
   823 F.3d 170 (2d Cir. 2016) ..........................................................25

*Ford Bend County v. Davis*,
   139 S.Ct. 1843 (2019)....................................................................21

*Garrett v. Murphy*,
   17 F.4th 419 (3d Cir. 2021) ...........................................................25

*Gordon v. New York City Board of Education*,
   232 F.3d 111 (2d Cir. 2000) ...................................................13, 19

*Hamer v. Neighborhood Housing Services of Chicago*,
   583 U.S. 17 (2017)....................................................20, 22, 23, 24

*Henson v. Santander Consumer USA Inc.*,
   137 S. Ct. 1718 (2017)...................................................................23

*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d Cir. 1998) ....................................................13, 19

*Hudson v. New York City*,
  271 F.3d 62 (2d Cir. 2001) ......................................................13, 14

*Manivannan v. U.S. Department of Energy*,
  42 F.4th 163 (3d Cir. 2022) ...........................................................25

*Manrique v. United States*,
  581 U.S. 116 (2017) .......................................................................21

*Matney v. Barrick Gold of North America*,
  80 F.4th 1136 (10th Cir. 2023) ......................................................24

*Patten v. District of Columbia*,
  9 F.4th 921 (D.C. Cir. 2021)...........................................................25

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
  22 F.4th 103 (2d Cir. 2021) ...........................................................12

*Sloley v. VanBramer*,
  945 F.3d 30 (2d Cir. 2019) ...........................................1, 5, 7, 9, 10

*United States v. Fell*,
  531 F.3d 197 (2d Cir. 2008) ...........................................................16

*United States v. Kopstein*,
  759 F.3d 168 (2d Cir. 2014) ...........................................................14

*United States v. Saladino*,
  7 F.4th 120 (2d Cir. 2021) .............................................................21

*United States v. Zane*,
  495 F.2d 683 (2d Cir. 1974) ...........................................................13

*Wall Guy, Inc. v. Federal Deposit Insurance Corporation*,
  95 F.4th 862 (4th Cir. 2024) ..........................................................24

*White v. U.S. Department of Justice*,
  16 F.4th 539 (7th Cir. 2021) ..........................................................25

*Wilson v. Russo*,
    212 F.3d 781 (3d Cir. 2000) ........................................................................17

*Yeager v. United States*,
    557 U.S. 110 (2009)....................................................................................13

## STATUTES AND RULES

28 U.S.C.
    § 2107 ..................................................... 3, 20, 21, 22, 23, 24, 26
    § 2107 Historical and Revision Notes, 1948 Act .........................................24

Fed. R. App. P.
    Rule 3 .........................................................................................................20, 25
    Rule 4.......................................................... 3, 20, 21, 22, 23, 24, 25, 26
    Rule 4 advisory committee's note ...............................................................23

## OTHER AUTHORITIES

Committee on Model Civil Jury Instructions Within the Third Circuit,
    Model Civil Jury Instructions for the District Courts of the
    Third Circuit § 4.12.3 (2018).......................................................................17

H.R. Doc. No. 96-112 (1979) .................................................................................23

H.R. Doc. No. 103-72 (1993) .................................................................................23

H.R. Doc. No. 105-269 (1998) ...............................................................................23

H.R. Doc. No. 111-28 (2009) .................................................................................23

H.R. Rep. No. 102-322 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1303 .................23

5 Modern Federal Jury Instructions - Civil P 87.03 ...............................................17

20 *Moore's Federal Practice—Civil* § 303.21[3][c][vii] (2024)............................22

Ninth Circuit Jury Instructions Committee, Manual of Model Civil
    Jury Instructions for the District Courts of the Ninth Circuit
    § 9.12 (Jan. 2017; last updated Mar. 2024) ............................................16, 17

Second Preliminary Draft of Proposed Amendments, prepared by the
U.S. Supreme Court and the Advisory Committee on Rules for
Civil Procedure (May 1945), https://babel.hathitrust.org/cgi/
pt?id=hvd.hl29dm&seq=3 .............................................................24

## INTRODUCTION

This is effectively a single-issue appeal: was Sloley prejudiced when the district court erroneously instructed the jury on the standard for conducting a visual body cavity inspection? The answer is yes. An officer must have reasonable suspicion that someone is hiding contraband *inside* their body cavity to conduct a visual inspection of it, as this Court held earlier in this very case. But the district court told the jury that VanBramer needed only reasonable suspicion of contraband in *or on* Sloley's person to conduct this extremely invasive search. The district court acknowledged that this was an error. Given the minimal—really no—trial evidence that Sloley had hidden drugs *in* his person, this admittedly erroneous instruction prejudiced Sloley and a new trial is warranted.

Rather than contend with this key issue, VanBramer's response brief primarily offers two counterfactuals to keep the Court away from it. The Court should reject them both. *First*, VanBramer argues that trial showed that no visual body cavity inspection occurred at all, only a strip search. This argument is not even colorable. Sloley and VanBramer both testified that VanBramer made Sloley strip naked (a strip search) *and then* made him bend over and spread his buttocks so VanBramer could observe the body cavity between them—exactly what this Court defines to be a visual body cavity search. *See Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) ("A 'visual body cavity search' is one in which the

police observe the suspect's body cavities without touching them (as by having the suspect to bend over, or squat and cough, while naked)." (citation omitted)).

*Second*, VanBramer argues that the court's admittedly erroneous instruction was not an error at all but a correct instruction on a *strip search*, and, since VanBramer conducted a strip search, there was no error. But the constitutionality of the strip search was not on trial. It was undisputed that VanBramer had reasonable suspicion to have Sloley remove his clothes to reveal whether they concealed contraband. Taking the additional step of a visual body cavity inspection, however, required reasonable suspicion of contraband inside the body cavity, as this Court already held in this case. It was a manifest error to instruct the jury to find for VanBramer if they concluded that the standard for a strip search was met, when the constitutionality of a visual body cavity search was on trial.

When VanBramer does briefly address the actual key issue—whether the error was prejudicial—he does not dispute that trial adduced no evidence supporting a reasonable suspicion that Sloley hid drugs *inside* his body. Rather, he challenges prejudice on the single narrow ground that other parts of the jury instructions, the verdict form, and arguments of counsel cured the error. At bottom, VanBramer (like the district court) misapprehends the nature of the error. The mistake was instructing the jury that there were two alternatives by which they could find for VanBramer: reasonable suspicion of drugs *in* or *on* Sloley's person.

Stating the correct alternative elsewhere (*in* the person) does not cure—or even contradict—the presentation of the incorrect alternative. If I say you may pick *A*, and later I say you may pick *A* or *B*, the first instruction in no way suggests that you cannot pick *B*. This Court cannot be sure the jury did not pick *B*: finding VanBramer had reasonable suspicion that Sloley had drugs "on his person" only.

Finally, the parties agree that the question of appellate jurisdiction presented is immaterial. VanBramer is incorrect that the requirement to file an amended notice of appeal—set out in Federal Rule of Appellate Procedure 4(a)(B)(ii) but in no statute, including 28 U.S.C. § 2107(a)—is jurisdictional. But there is no dispute that every issue presented in post-trial briefing was adequately teed up at trial. So while the Court must satisfy itself that it has jurisdiction, the parties agree that the question is purely academic and does not affect the issues to be decided on appeal.

## ARGUMENT

### I.    THE JURY INSTRUCTION CONTAINED PREJUDICIAL ERRORS

#### A.    The Court's Admittedly Erroneous Jury Instruction About The Reasonable Suspicion Required To Conduct A Visual Body Cavity Search Was Prejudicial

The Court should hold that the district court's admittedly erroneous instruction on visual body cavity searches was prejudicial.

To start, it should reject VanBramer's two attempts to distort the record to avoid this conclusion. The first is that no visual body cavity search occurred at all,

only a strip search. This would be news to everyone below, including VanBramer himself, who testified that he not only had Sloley strip, but also had him bend over and open his buttocks for a visual inspection of the body cavity between them—a textbook visual body cavity search as this Court defines it. The second is that the admitted error was not an error at all because the trial court was instructing the jury correctly about strip searches. This would be news to everyone below too, since only the constitutionality of the body cavity search was on trial—including news to the district court, which itself described its instruction as concerning visual body cavity searches and admitted an error. In short, the record refutes both positions.

With VanBramer's counterfactuals rejected, the Court should hold that the district court's admitted error was prejudicial. VanBramer devotes only 2.5 pages to this dispositive issue, *see* Resp. Br. 33-36, and he opposes it only narrowly. He does not contend that the trial evidence showed that he *had* reasonable suspicion that Sloley was hiding drugs in a body cavity. He only argues that other places where the correct standard was presented—earlier in the jury instructions, on the verdict form, and by counsel—render the central error harmless. But they do not. Other, correct statements of law do not cure the error because of the nature of it. The court erroneously told the jury to find for VanBramer if the evidence showed *A* (he reasonably suspected drugs were hidden *in* Sloley's body) or *B* (he reasonably suspected drugs were hidden *on* Sloley's body). Earlier instructions to

find for VanBramer if *A* do not cure that error; they do not even contradict it. Nor could the verdict form or statements by counsel overcome an erroneous instruction *by the court* in any event—not when the court also instructed the jury to follow only its statements of law, which VanBramer's brief does not address at all.

The Court should vacate and remand for a new trial properly instructed.

### 1. The district court erred—admittedly—in its instruction about the visual body cavity inspection that Sloley experienced

VanBramer's counterfactuals—that no visual body cavity search occurred at all and that the district court's instruction was proper—should be rejected.

#### a. *VanBramer conducted a visual body cavity search*

This Court described what a visual body cavity search entails earlier in this case. A "'visual body cavity search' is one in which the police observe the suspect's body cavities without touching them (as by having the suspect to bend over, or squat and cough, while naked)." *Sloley v. VanBramer*, 945 F.3d 30, 36-37 (2d Cir. 2019) (citation omitted). Less intrusively, "a 'strip search' occurs when a suspect is required to remove his clothes." *Id.* More intrusively, "a 'manual body cavity search' occurs when the police put anything into a suspect's body cavity, or take anything out." *Id.*

"Here Sloley was subjected to a strip search *and* visual body cavity search." *Sloley*, 945 F.3d at 37 (emphasis added). VanBramer acknowledges how this

Court characterized the search, but claims that this description was based on the summary judgment record and "the evidence adduced at trial did not fit that narrative" but rather showed "only a strip search and not a visual body cavity search." Resp. Br. 32-33. That argument is not colorable. It is true that VanBramer first conducted a strip search: He had Sloley "remove an article of clothing until at which time they have no more clothing and you can see the exterior of the skin." JA348 (VanBramer), JA369 (describing strip search); *see also* JA397 (Sloley) ("He took me in the back room, had me take off each of my clothes, clothing one by one," until "I was completely naked …."). If the search stopped there, with Sloley stripped naked, it would have been only a strip search.

But it did not stop there. As Slolely testified, "then when I was completely naked he made me lift up my testicles so he can see I'm not hiding nothing, then he made me turn around and spread." JA397. VanBramer corroborated this testimony: He had Sloley "bend over," and there is "a natural void between their butt cheeks," "[s]o I told Mr. Sloley just to separate his cheeks." JA370-371. When asked, "And so you had him separate his cheeks and then you inspected inside that void?," Van Bramer answered, "I saw that void, correct." JA371. Even taking trial evidence in the light most favorable to VanBramer, this evidence shows a paradigmatic, definitional visual body cavity inspection, "in which the police

observe the suspect's body cavities without touching them (as by having the suspect bend over … while naked)." *Sloley*, 945 F.3d at 36-37.

Given this clear evidence, VanBramer's arguments that he did not conduct a visual body cavity search should be rejected. He seems to suggest that this was only a strip search (1) because he did not look *further* inside Sloley's anus and (2) because he was looking only for "an object held between [Sloley's] buttocks." Resp. Br. 31. On the first point, having someone turn, bend over, and spread their buttocks is exactly how officers conduct a visual search inside someone's anus, as this Court has recognized. *See Sloley*, 945 F.3d at 36-37. To look further inside the body would require a *manual* body cavity inspection, which this Court distinguished as yet more intrusive than a visual cavity search. *Id*. Nothing more is required (or possible) to constitute a visual body cavity inspection.

On the second point, if VanBramer only suspected Sloley was clenching an object between his buttocks, then only a far less intrusive search would have been reasonable. He could have just had Sloley widen his stance while undressed, so any object held between his buttocks would fall down. But the trial evidence shows this was not VanBramer's suspicion. VanBramer's testimony made clear that he was searching for drugs hidden in a baggy inside Sloley's anus. When asked about suspects "concealing drugs inside their anus," VanBramer explained that he had "been a part of investigations where that's occurred" and that "this is a

common concealment method." JA363-364. Dozens of times before, he found drugs "in the void." JA373; *see also* JA373 ("Q. Okay. How many times were the drugs in their anus? A. More times than I found drugs in the clothes."). He had also seen "publications" and "bulletins of some things that were found and … were pulled out of that area." JA363-364. Based on this "training and experience," VanBramer speculated Sloley had drugs "[i]n a bag … [o]r something that they're able to be concealed within his—the area of his butt checks." JA366; JA370 (speculating "the drugs were packaged"). For these reasons, VanBramer suspected that "Mr. Sloley could have had drugs inside his person." JA368. In other words, VanBramer was not just searching for drugs clenched between the buttocks; he was looking for drugs hidden inside the person.[1] Beyond serious dispute, he conducted a visual body cavity search—and needed reasonable suspicion for one.

### b.   The district court's instruction was wrong

VanBramer's second counterfactual is that the district court was instructing about strip searches, so it did not make an error. The court itself, of course, acknowledged that it made "a misstatement of law" that "could have permitted the

---

[1]   It is therefore irrelevant whether someone holding drugs clenched between his buttocks, but not inside his anus, is carrying drugs "on his person." *See* Resp. Br. 31-32. The Court can disregard this argument, as well as the citations—to *freedictionary.com* and other online dictionaries, and decisions from out-of-circuit state courts in Texas, Illinois, and Massachusetts—supposedly supporting it.

jury to make an impermissible conclusion." SPA37. It made that error because its instruction came from a strip search case that did not apply the "heightened standard for reasonable suspicion concerning the 'more intrusive' visual body cavity search." SPA37 (explaining basis for error).

Unabashed, VanBramer now insists that the district court got it right. He argued that Sloley "challenged both a strip search and a visual body cavity search and therefore [the court] discussed both kinds of searches," properly "instructing the jury that, to rule in Eric's favor, it needed to find he had reasonable cause to believe only that plaintiff was concealing contraband 'in or on his person.'" Resp. Br. 29, 33. The Court should reject this attempt at revisionist history.

For starters, the evidence discussed above that VanBramer conducted not just a strip search but "a strip search and visual body cavity search" forecloses this argument. *Sloley*, 945 F.3d at 37. Reasonable suspicion of drugs *on* someone's person justifies a strip search, and so "in or on his person" might be a proper instruction in a case involving only a strip search. But VanBramer did not conduct only a strip search. He kept going and performed a visual body cavity search, which makes the instruction an error. Rejecting VanBramer's first argument (only a strip search) suffices to reject his second (no error because only a strip search).

The Court can also independently reject the counterfactual that the constitutionality of both the strip search and the visual cavity search were on trial,

making the instruction proper. The constitutionality of the strip search was not on trial. Sloley "forfeited any claim regarding the unconstitutionality of the strip search" during his first appeal to this Court, "challeng[ing] only the constitutionality of the visual body cavity search." *Sloley*, 945 F.3d at 37 n.4. That is the only claim this Court remanded for trial. *See id.* at 47.

And it was the only claim tried. As Sloley's counsel framed it in closing, "The question here, therefore, is did Officer VanBramer specifically think he was going to, by looking into, again, his words, the void between Mr. Sloley's butt cheeks, and I don't know what other word you would use for that, I understand that to be his anus, did he think by looking in there he was going to find drugs." JA597. Indeed Sloley's counsel conceded, "I think you heard an explanation for why you might frisk him, … maybe even why you might check his clothes, but not why you might search his anus and that's what the law requires of you." JA597-598.[2] The jury instructions, meanwhile, referenced Sloley's allegations that VanBramer violated his rights when he conducted a strip search and visual body cavity search, and distinguished the two types of searches, but it gave a reasonable-suspicion instruction only on body cavity searches. JA614-615. The verdict form

---

[2]    Sloley in fact offered jury instructions that "[t]he only claim you are being asked to evaluate in this case is a claim that the defendant conducted an unconstitutional, visual cavity search of the Plaintiff's anus." JA108.

too asked only about "a visual body cavity search without reasonable suspicion." JA633. The district court understood this: "At issue in this trial was not plaintiff's strip search, but solely the visual body cavity search," it wrote in its post-trial decision. JA703. So the record forecloses VanBramer's contention now that the instruction was proper because both claims were tried. *See* Resp. Br. 30.

Even if both claims had been tried, of course, the instruction would have been an error. Reasonable suspicion to conduct a strip search—"reasonable suspicion that [Sloley] was hiding contraband in or on his person"—could only support a defendant's verdict *on a strip search claim*. JA615. If the court had instructed the jury that "[i]n short, the relevant question" was whether this lower standard was met in a case with *both* claims, that would have been an error too.

## 2. That admitted error was prejudicial

VanBramer's opposition brief ignores dispositive arguments that Sloley made for why the district court's error was prejudicial. Sloley explained in his opening brief how thin the evidence was to support a reasonable suspicion that Sloley was hiding drugs inside his body. Br. 33-34. He cited both this Court's and the district court's recognition of that fact. *See id.* On this record, he explained, the Court cannot be convinced that the erroneous jury instruction did not influence the verdict. *See id.* VanBramer does not dispute any of this. He does not argue that trial did show that he could have developed a reasonable suspicion Sloley hid

drugs inside his body. He has forfeited any opposition to this argument. *See, e.g.*, *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 123 n.8 (2d Cir. 2021) ("'An appellee who fails to include and properly argue a contention in the appellee's brief takes the risk that the court will view the contention as forfeited.'").

Instead, VanBramer argues only that the error was harmless because the right standard was stated elsewhere. *See* Resp. Br. 33-36. This was why the district court concluded the error was harmless, too. SPA40-41. But, as Sloley explained (Br. 35-36), at bottom this misapprehends the nature of the error. The error was presenting the jury with an alternative: You may find for VanBramer if he reasonably suspected Sloley had drugs *in* his person or *on* his person. Giving the correct alternative (*in*) does not negate or cure the erroneous one (*on*). To reiterate the analogy from Sloley's opening brief, imagine that I tell my son that he can have an apple for snack. Later, I tell him that he can have an apple or an orange. He eats an orange. Can I be mad? Can I expect him to think that he *could not* have orange because my first instruction only mentioned an apple? Of course not. I *told him* that he could eat an orange. Just so here. Again, VanBramer responds to none of this, forfeiting opposition. *See* Br. 35-36.

Turning to what VanBramer does argue, it is incorrect that the right standard's appearing elsewhere in the instruction, verdict form, or counsel's

arguments renders the error harmless. "An error is harmless *only if* the court is convinced that the error did not influence the jury's verdict." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000); *see also Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 525 (2d Cir. 1998) (vacating jury verdict where "[t]he jury might well have reached a different result had appropriate instructions been given").[3] That is not the case here.

*First*, VanBramer argues that the jury instruction's earlier stating "inside the body cavity" cures the error. Resp. Br. 34. But this Court has expressly held otherwise: "We reject the notion, however, that a court's … incorrect statements are necessarily 'cured' so long as the charge contains the correct standard elsewhere. Our precedents do not stand for any such proposition." *Hudson v. New York City*, 271 F.3d 62, 70 (2d Cir. 2001) (cited at Br. 36). In *Hudson*, this Court vacated a jury verdict in a Fourth Amendment § 1983 case and remanded for a new

---

[3]  In passing, VanBramer seems to dispute this standard. Resp. Br. 35. He argues the Court cannot consider "what the jury might have discussed" when given the erroneous instruction. *Id.* But the cases that he cites concern speculation into jury deliberations in the context of whether a hung count was relevant to issue-preclusion analysis (*Yeager v. United States*, 557 U.S. 110, 121 (2009)), and in the context of whether the jury's not-guilty verdict on one count in the indictment barred it from later entering a verdict of guilty on another count in the indictment (*United States v. Zane*, 495 F.2d 683, 689 (2d Cir. 1974)). Neither case concerns whether this Court considers if "[t]he jury might well have reached a different result had appropriate instructions been given" when analyzing prejudice from erroneous jury instructions, *Holzapfel*, 145 F.3d at 525—which of course it does.

trial due to an erroneous jury instruction, despite a correct statement elsewhere in the instruction. *See id.* ("[W]e find the mention of the correct standard inadequate" because the instruction overall "was confusing as to [what] was required to find a violation of Ellison's Fourth Amendment rights[.]"). This Court vacated a jury verdict after a criminal trial in similar circumstances in *United States v. Kopstein*, 759 F.3d 168, 182 (2d Cir. 2014) (cited at Br. 36), again holding that the error was not made harmless just because "the district court stated the standards correctly elsewhere in the transcript." VanBramer addresses neither case.

Under this precedent, VanBramer's opposition fails. His two-sentence argument (at Resp. Br. 34) makes no effort to explain why stating the correct standard elsewhere cured the erroneous instruction in this case. He does not address the framing of the faulty charge as summing up and distilling the law ("in short"), making it more likely to have misled the jury. *See* Br. 36; *cf. Chalmers v. Mitchell*, 73 F.3d 1262, 1271 (2d Cir. 1996) (noting that "the proper instruction was nearly the last thing the jury was told before deliberating, making it more likely that it is what they remembered"). He does not address the lack of curative instruction. *See* Br. 36. He only points out that there was a correct instruction elsewhere. *See* Resp. Br. 34. But the decisions by this Court that he ignores prove that that is not enough.

*Second*, the verdict form did not cure the erroneous jury instructions. As Sloley explained (Br. 36), the district court repeatedly directed the jury to follow the law as the court instructed, *see* JA601-602—not to divine the law themselves from the language of the verdict form. VanBramer never addresses that direction by the court. He also cites no case holding that a verdict form with the correct standard overwrites a court's instruction to apply the wrong one. The cases he does cite do not support that position. In *Boggs v. Lewis*, the court rejected a challenge to a *verdict form* in part because "the jury instructions clearly asked" the right question. 863 F.2d 662, 666 (9th Cir. 1988). That case does not support disregarding the court's erroneous direction to the jury based on the verdict form. *DeJesus v. Lewis* says nothing about a verdict form curing an erroneous instruction; there, only a "general verdict form" was used, and if anything it repeated the error. 14 F.4th 1182, 1201 (11th Cir. 2021). Instead, there the court found erroneous jury instructions not prejudicial because "the evidence reasonably supports the jury's finding." *Id.* Here, VanBramer did not even respond to Sloley's argument (at Br. 33-35) that the evidence did *not* support a reasonable suspicion that he was hiding drugs *in* his body.

*Third*, arguments by counsel did not cure the court's error. Resp. Br. 35. "[A]rguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as

matters of argument, not evidence, and are likely viewed as the statements of advocates." *Boyde v. California*, 494 U.S. 370, 384 (1990); *see also United States v. Fell*, 531 F.3d 197, 222-224 (2d Cir. 2008). In contrast, instructions from the court "are viewed as definitive and binding statements of the law." *Boyde*, 494 U.S. at 384. Indeed, that is just what the court below told the jury—to follow its instructions, *see* JA601-601, not arguments by counsel. VanBramer cites no cases holding that an erroneous instruction by the court can be cured by counsel's arguments (indeed, he cites no cases at all to support this argument).

### B.    The Negligence Instruction Was Prejudicially Misleading

Regardless of whether negligence can *sometimes* be at issue in a § 1983 action (Resp. Br. 39), a negligence instruction had no place at this trial about the objective reasonableness of VanBramer's—undisputedly intentional—visual body cavity search. VanBramer excerpts the Ninth Circuit Model Civil Jury Instructions § 9.12 to argue for a negligence instruction, but the full instruction is as follows:

> A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, the plaintiff must prove the defendant *intended to search the plaintiff's [person] [residence] [vehicle] [other object of search]*. It is not enough if the plaintiff only proves the defendant acted negligently, accidentally or inadvertently *in conducting the search*. However, the plaintiff does not need to prove the defendant intended to violate the plaintiff's Fourth Amendment rights.[4]

---

[4]    The Third Circuit Model Jury Instruction that VanBramer cites applies to § 1983 cases about unlawful warrant applications, where negligence *is* at issue in determining whether an officer made assertions to obtain a warrant "with reckless

- 16 -

Here, VanBramer's intent "to search the plaintiff[]" and "in conducting the search" were not at issue. Ninth Circuit Model Civil Jury Instruction § 9.12. VanBramer undisputedly intended to conduct the search. He testified at trial that he took Sloley to a private room in order to strip search him. JA364. When intent is not at issue, Modern Federal Jury Instructions do not recommend a negligence instruction. *See* 5 Modern Federal Jury Instructions—Civil P 87.03 (87-78 State of Mind—Negligence). Including the negligence instruction was an error because it confused this issue. This case is therefore not materially distinguishable from *Dancy v. McGinley*, in which this Court found that including a similar instruction on "intent and negligence" in that excessive force case—which also required the jury to apply a standard of objective reasonableness—was so confusing as to warrant a new trial. 843 F.3d 93, 118-120 (2d Cir. 2016).

Nor was the negligence instruction necessary to "ensure[] that the jury would not find [VanBramer] liable based on mere negligence" in, for example, interpreting his dog's alert or performing the field drug test, as VanBramer argues. Resp. Br. 39. Both of these examples are relevant only to the reasonableness of

---

disregard for the truth when [the] officer has obvious reasons to doubt the truth of what [he/she] is asserting." Third Circuit Model Civil Jury Instructions § 4.12.3 (2018). Because that inquiry involves analysis of the officer's state of mind, *see, e.g.*, *Wilson v. Russo*, 212 F.3d 781, 786-787 (3d Cir. 2000), the negligence instruction is proper—unlike in the case of § 1983 unlawful searches.

VanBramer's suspicion that Sloley was hiding drugs in his anal cavity—again, an objective question. If VanBramer negligently conducted the canine search or the field test, and those negligent acts precipitated the body cavity search—rather than an *objectively* reasonable suspicion—then the jury should have found for Sloley, not VanBramer. But the jury might not have reached that verdict, thinking unreasonable suspicion was excusable if it was reached by mere negligence. So VanBramer's own hypotheticals on appeal prove this was prejudicial error.

VanBramer's assertion that the negligence instruction was not erroneous because it "became relevant only if the jury found that [VanBramer] did not violate plaintiff's Fourth Amendment rights" also misses the point. Resp. Br. 37. By including an irrelevant and misleading negligence instruction in a case where the intent to commit the search was not at issue, the district court risked confusing the jury about what showing was required to conclude *whether* VanBramer violated Sloley's rights. That risk of confusion warrants a new trial.

### C.    The Evidentiary Errors Underscore The Prejudice

The district court's evidentiary missteps make the case for prejudice stronger, without their needing to be independent grounds for a new trial. *See* Resp. Br. 39-44. The district court and this Court have recognized that the support for a visual body cavity search was minimal. *See* Br. 18. Then, during trial, the jury heard inadmissible testimony about Sloley's prior convictions (albeit with a

curative instruction); the court deprived Sloley of evidence to impeach Bryan VanBramer, in a trial that it later admitted turned heavily on credibility[5]; and it allowed gratuitous character evidence about VanBramer and his lovable police dog. *See* Br. 11-12. With thin relevant evidence, and with prejudicial evidentiary rulings along the way, this Court cannot be "convinced that the error [in jury instructions] did not influence the jury's verdict" at trial. *Gordon*, 232 F.3d at 116. Rather, "[t]he jury might well have reached a different result had appropriate instructions been given." *Holzapfel*, 145 F.3d at 525. These evidentiary errors are further proof that the erroneous jury instructions warrant a new trial.

## II.    THE COURT HAS JURISDICTION OVER THE POST-TRIAL MOTIONS

VanBramer acknowledges that Sloley's challenges to the jury instructions on reasonable suspicion and negligence "are properly before the Court on plaintiff's appeal from the initial judgment rendered against him." Resp. Br. 54. Indeed, VanBramer identified no issue that turns on whether the Court has appellate jurisdiction over the denial of the post-trial motions. *See, e.g.*, Resp. Br. 3, 26. So the parties agree the jurisdictional question is purely academic. *See* Br. 28-29.

---

[5]    VanBramer claims that Sloley never tried to enter the disciplinary record into evidence or explain how it would have been admissible. Resp. Br. 42. Not so. Sloley's counsel marked the record for entry into evidence, described the record, and defended its admissibility for credibility purposes. JA449-450.

The parties also agree that statutes, and not rules of court, set the bounds of this Court's jurisdiction. *See* Br. 23; Resp. Br. 48. This "rule of decision" is meant to be "both clear and easy to apply." *Hamer v. Neighborhood Hous. Srvcs. of Chicago*, 583 U.S. 17, 25 (2017). Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) is, of course, a rule, not a statute. It provides: "A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion." To be jurisdictional, however, those requirements also need to be found in a statute. As Sloley explained, they are not. *See* Br. 25.

In response, VanBramer points to 28 U.S.C. § 2107(a). He claims that that statute codifies Rule 4(a)(4)(B)(ii). Resp. Br. 48. Section 2107(a) provides: "Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." It says nothing about the scope of this Court's jurisdiction after a timely notice of appeal is filed. It says nothing about amending notices of appeal. It says nothing about post-trial motions. So VanBramer reads deep between its lines. He argues that because § 2107(a) sets the deadline for

filing a notice of appeal to be 30 days "*after*" entry of judgment or an order, this Court lacks jurisdiction over any later-in-time order, including the ones here denying Sloley's post-trial motions. In short, VanBramer's view is that Rule 4(a)(4)(B)(ii) has been surreptitiously codified in the word "after" in § 2107(a).

That does not suffice to grant Rule 4(a)(4)(B)(ii) jurisdictional import. Supreme Court precedent requires that "the Legislature clearly state[] that a prescription counts as jurisdictional." *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (quoting *Ford Bend Cnty. v. Davis*, 139 S.Ct. 1843, 1850 (2019)). At minimum, § 2107(a) is not a "clear statement" that Rule 4(a)(4)(B)(ii) is "a jurisdictional prescription." *Id.* (cleaned up).[6] That ought to end the analysis: Jurisdiction derives from statutes only, and the only statute VanBramer identifies has nothing close to a clear statement that amended notices of appeal are required to confer jurisdiction over the denial of post-trial motions. Since Rule

---

[6]      Although *Manrique v. United States* did construe a provision relating to criminal sentencing to contemplate a certain sequence of events, as VanBramer argues (Resp. Br. 50), that was not enough for the Supreme Court to deem the rule's requirement to be jurisdictional, so it does not support reaching that conclusion here. 581 U.S. 116, 120-121 (2017) ("We do not need to decide in this case whether the Government is correct" that the rule at issue "is a jurisdictional prerequisite to securing appellate review.").

4(a)(4)(B)(ii)'s "limit … appears nowhere in the text of § 2107[(a)]," it is not jurisdictional—it is "clear and easy" as that. *Hamer*, 583 U.S. at 24-25.[7]

Whether a rule supposedly "implements" a statute (Resp. Br. 48) is not part of the analysis. That is the very error the Supreme Court reversed in *Hamer*. There the Seventh Circuit had held that Rule 4(a)(5)(C)'s time requirement was jurisdictional because it was "the vehicle by which § 2107(c) is employed." 583 U.S. at 26. The Supreme Court rejected this approach as "conflating Rule 4(a)(5)(C) with § 2107(c)" and "fail[ing] to grasp the distinction our decisions delineate between jurisdictional appeal filing deadlines and mandatory claim-processing rules." *Id.* VanBramer invites the same error here. Actually, worse— the Seventh Circuit relied on the fact that § 2107(c) once limited extensions to 30 days (a fact the Supreme Court dismissed), whereas § 2107(a) has never

---

[7] If "after" in § 2107(a) carried the jurisdictional weight VanBramer ascribes it, then Rule 4(a)(2)—which allows earlier-filed notices of appeal to encompass a later-filed entry of an order—would exceed a court of appeals's jurisdiction. The Committee Notes indicate that Rule 4(a)(2) was "designed to avoid the loss of the right to appeal by filing the notice of appeal prematurely," since "the courts of appeals quite generally have held premature appeals effective"—all impossible if "*after*" in § 2107(a) carries jurisdictional force. *See also* 20 *Moore's Federal Practice—Civil* § 303.21[3][c][vii] (2024) ("A circuit court may hear the appeal from a postjudgment order if it finds that the postjudgment order is inextricably entwined with issues that have been properly raised in the notice of appeal.").

contained Rule 4(a)(4)(B)(ii)'s requirements for amended notices covering post-trial motions.[8]

Nor are policy arguments part of the analysis. *See Hamer*, 583 U.S. at 25. The Court ought not "presume with [VanBramer] that any result consistent with [his] account of the statute's overarching goal must be the law." *Id.* (quoting *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1725 (2017)). It does not matter why notices of appeal arguably *should* follow the judgments or orders from which they appeal. *See* Resp. Br. 49.[9] These policy points are not part of the

---

[8] In fact, Congress has repeatedly turned down invitations to amend § 2107 to include Rule 4(a)(4)(B)(ii). The Federal Rules of Appellate Procedure were amended to include the amended-notice-of-appeal requirement for certain post-trial motions in 1979, with various revisions in 1993, 1998, and 2009 (VanBramer is incorrect that Rule 4(a)(4)(B)(ii) was added in a 1991 amendment, Resp. Br. 47). *See* Fed. R. App. P. 4 advisory committee's note. The Supreme Court transmitted each of those amendments to Congress before they became effective, but Congress declined to enact Rule 4(a)(4)(B)(ii) in its various forms into law every time. *See* H.R. Doc. No. 96-112, at 5 (1979); H.R. Doc. No. 103-72, at 35-39 (1993); H.R. Doc. No. 105-269, at 117-118 (1998); H.R. Doc. No. 111-28, at 3-5 (2009). Contrast Congress's inaction on Rule 4(a)(4)(B)(ii) with its near-immediate enactment of Rule 4(a)(6), enacted as § 2107(c), in 1991. The House Report to that legislation explained, "The purpose of the bill … is to provide technical amendments to … the Federal Rules of Civil and Appellate Procedure submitted to Congress on May 1, 1991, by the Supreme Court of the United States." H.R. Rep. No. 102-322, at 4 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1303, 1303.

[9] Even if the Court were to consider the policy arguments undergirding § 2107(a), the legislative history demonstrates that Congress was not animated by the policy concerns raised by VanBramer when enacting the provision. As part of a comprehensive reform effort, Congress enacted § 2107(a) to unify various civil appeals deadlines, align federal appellate practice with prevailing state practices,

"clear and easy to apply" test, *Hamer*, 583 U.S. at 25, and they reveal nothing about whether § 2107(a)'s text clearly makes Rule 4(a)(4)(B)(ii)'s requirements jurisdictional.[10]  So VanBramer's atextual arguments are irrelevant.

VanBramer argues that other courts of appeals and this one in summary orders have found Rule 4(a)(4)(B)(ii) to be jurisdictional already, so this Court should follow suit.  Resp. Br. 51-52.  Every summary order he cites, however, makes passing reference to lacking jurisdiction over post-judgment motions, citing Rule 4(a)(4)(b)(ii), but does not engage in the requisite statutory analysis.  As for the decisions of other courts of appeals, most of them similarly do not consider the dispositive statutory question that determines the jurisdictional status of Rule 4(a)(4)(B)(ii); they too largely just use the term "jurisdictional" to describe the rule's claims-processing requirements.[11]  The three cases that do make reference to

---

and limit the power of district courts to reopen cases by entertaining certain post-trial motions.  In selecting a thirty-day time limit, legislators were attuned to litigants' need for some measure of flexibility in developing their appeals, recognizing that there would be "[a]mple time" for litigants to "perfect[] the appeal" after filing.  28 U.S.C. § 2107, Historical and Revision Notes, 1948 Act; *see* Second Preliminary Draft of Proposed Amendments, prepared by the U.S. Supreme Court and the Advisory Committee on Rules for Civil Procedure at 161 (May 1945).

[10]    Nor are any of VanBramer's hypotheticals about filing an *amended* notice of appeal—after a timely notice of appeal was already filed "after" an appealable judgment, decree, or order—to encompass post-trial motions.

[11]    *See Wall Guy, Inc. v. FDIC*, 95 F.4th 862, 868-871 (4th Cir. 2024), *petition for cert. filed*, No. 24-159 (U.S.); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136,

§ 2107(a)'s jurisdictional time requirement do not look for a clear statement of Rule 4(a)(4)(B)(ii)'s requirement for a new or amended notice of appeal in that statute.[12] If they did look, as this Court should, they would not find it.[13]

Because Rule 4(a)(4)(B)(ii)'s requirements are not jurisdictional, this Court can excuse strict compliance with them. *See* Br. 25-28. VanBramer does not dispute that the Court can do so. And the Court should do so, given that Sloley previewed an appeal of post-trial decisions in his notice, so there is no prejudice, and given his *pro se* incarcerated status. *See id.*[14] As this Court has said, Rules 3

---

1159-1160 (10th Cir. 2023); *Manivannan v. U.S. Dep't of Energy*, 42 F.4th 163, 169 n.1 (3d Cir. 2022); *White v. U.S. Dep't of Justice*, 16 F.4th 539, 543 (7th Cir. 2021), *cert. dismissed*, 143 S.Ct. 438 (2022).

[12]    *Patten v. District of Columbia*, 9 F.4th 921, 929-930 (D.C. Cir. 2021); *Garrett v. Murphy*, 17 F.4th 419, 424-425 (3d Cir. 2021); *Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc.*, 997 F.3d 367, 377-378 (1st Cir. 2021).

[13]    VanBramer attempts to distinguish *Elliott v. City of Hartford*, 823 F.3d 170 (2d Cir. 2016), as concerning only prior orders, not later ones. The plaintiff there, however, filed her notice of appeal after three orders (naming only one of them) but *before* judgment. Had she filed after judgment, all three orders would have been reviewable under the merger rule. In one sense, then, the Court permitted the plaintiff to appeal the later *judgment* into which all prior orders merged, by way of the notice of appeal that she filed five days before that judgment issued.

[14]    Sloley does not contend that his "expressed desire" to appeal an order denying his post-trial motions "creates appellate jurisdiction," Resp. Br. 52, because it did not need to. Noticing an appeal of the judgment created appellate jurisdiction. The *scope* of that appeal, as it relates to post-trial motions, is a matter of claims-processing rules and not jurisdiction. It is therefore also jurisdictionally irrelevant whether Sloley named both post-trial motions or only one of them in the notice—and VanBramer does not argue that he was surprised or prejudiced by Sloley's appealing both denials, which he plainly would have expected.

and 4 "tolerate a common sense approach … and do not insist upon 'literal compliance in cases in which it cannot fairly be exacted.'" *Bradley v. Coughlin*, 671 F.2d 686, 689 (2d Cir. 1982). Again, VanBramer does not dispute that the Court should give Sloley leeway if it is able to do so—and it is able.

In sum, VanBramer's sole opposition to the Court's considering the post-trial motions is that it lacks jurisdiction to do so, and the plain text of the sole statute that he relies on for the jurisdictional restriction, § 2107(a), does not support him. The Court can exercise jurisdiction over those motions and, given Sloley's *pro se* incarcerated status and the lack of prejudice to VanBramer, it should do so.

## CONCLUSION

For these reasons, the Court should vacate the judgment in favor of VanBramer and remand the case for a new trial.

Respectfully submitted.

/s/ Ryan Chabot
RYAN CHABOT
ALAN SCHOENFELD
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Counsel for Plaintiff-Appellant*

August 27, 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by Local Rule 32.1(a)(4).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,845 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font and complies with the requirements of Fed. R. App. P. 32(a)(5)-(6).  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/ Ryan Chabot
RYAN CHABOT


August 27, 2024